NO. 07-02-0077-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 29, 2002

_____

CASH AMERICA INTERNATIONAL, INC.
AND MR. PAYROLL CORPORATION, APPELLANTS

V.

EXCHANGE SERVICES, INC., APPELLEE

_____

FROM THE 320th DISTRICT COURT OF POTTER COUNTY;

NO. 89151-D; HONORABLE DON EMERSON, JUDGE

_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Mr. Payroll Corporation and Cash America International, Inc., appeal from an order denying their motion to abate a suit by Exchange Services, Inc., and to order the parties to arbitration. We vacate the trial court's order and remand.

BACKGROUND

Mr. Payroll Corporation, as franchisor (Mr. Payroll) and Exchange Services, Inc., as franchisee (ESI), executed an Amended and Restated Franchise Agreement (the Agreement) to be effective July 31, 2000. Cash America International, Inc. (Cash America) executed the Agreement in the capacity of Guarantor. The Agreement, in general, concerns the establishment and operation of facilities which offer check cashing and related services. The term of the Agreement is ten years from the date of execution, with provisions for renewal. Under the Agreement, if ESI did not operate the business in which a check-cashing facility was located (a "third party franchise"), then Mr. Payroll was, or is, required to lease or sublease the facility Location and in turn sublease its Location rights to ESI.

Section 20 of the Agreement is entitled Resolution of Disputes. Among other provisions, subsection 20.B provides that

> Except as provided in Section 20(D) below [addressing injunctive relief] and except for actions brought with respect to the ownership or use of the Proprietary Marks or payment of any fees described in Section 3 hereof (any of which actions shall be brought only in the state or federal courts in Tarrant County, Texas), Franchisor and Franchisee agree that any and all disputes between them, and any claim or controversy arising out of, or related to this Agreement, or the making, performance, or interpretation thereof, shall be finally settled solely and exclusively by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or any successor organization. . . .

Subsection 23.O of the Agreement provides that all previous agreements related to Existing Franchises are terminated and of no further force or effect. The subsection also provides that notwithstanding the termination provisions of subsection 23.O, "nothing in this agreement shall terminate or otherwise affect any lease of real property that relates to the Existing Franchises and that is valid and effective as of the date of this Agreement." As of the date of the Agreement, a lease dated February 3, 1989 (the 1989 lease), existed between ESI and Toot 'N Totum Food Stores (Toot 'N Totum), whereby Toot 'N Totum leased locations in some of its convenience stores to ESI. The locations were for the purpose of ESI operating check-cashing operations. The 1989 lease did not address choice of law, venue or procedures for dispute resolution.

In addition to the Amended and Restated Franchise Agreement, Mr. Payroll and ESI executed an Assignment and Assumption of Lease and Estoppel Certificate agreement effective July 31, 2000 (the Assignment). The Assignment, in relevant part, (1) assigned to Mr. Payroll all of ESI's rights under the 1989 lease, (2) required Mr. Payroll to perform all of ESI's obligations under the 1989 lease, and (3) provided that "venue for any dispute in connection with this Assignment shall be in a court of competent jurisdiction in the county in which the Premises are located."

In September, 2001, ESI sued Mr. Payroll and Cash America in Potter County where ESI alleged a majority of the premises in dispute are located. The suit alleged execution of the Assignment by Mr. Payroll, assumption of Mr. Payroll's obligations under the Assignment by Cash America, and breach of the Assignment and the 1989 lease by

both Mr. Payroll and Cash America. ESI alleged that (1) the 1989 lease required ESI to pay certain remodeling costs incurred by Toot 'N Totum, (2) Mr. Payroll and Cash America assumed ESI's lease obligations, (3) Mr. Payroll and Cash America refused to pay the remodeling costs to Toot 'N Totum, and (4) ESI paid the costs to Toot 'N Totum because of the refusal of Mr. Payroll and Cash America to pay. ESI sought damages for breach of the Assignment and 1989 lease, as well as generally pleading for declaratory judgment construing the agreements and declaring the rights and duties of the parties under the written instruments. Toot 'N Totum was not made a party to the suit by ESI, Mr. Payroll or Cash America.

Mr. Payroll and Cash America responded to ESI's suit with a Motion to Abate by which they sought an order directing the parties to arbitrate the claims and abating the lawsuit. They also filed an Original Answer subject to the motion to abate by which they again asserted that the claims made by ESI were subject to arbitration. ESI did not and does not contest the validity of the arbitration provision in the Agreement.[1]  Rather, ESI urged the trial court to deny the motion to refer the claims for arbitration because (1) Toot 'N Totum was a necessary party to the dispute, Toot 'N Totum would have to be joined in the suit before the claims could be resolved, and Toot 'N Totum was not a party to an

---

[1]Cash America signed the Franchise Agreement only as guarantor, and was not included in the term "Franchisor" as used in the arbitration provision. ESI does not contend that its claims against Cash America are not subject to the arbitration provision on the basis that Cash America was not included in the term "Franchisor." See, e.g., ANCO Ins. Servs. of Houston, Inc. v. Romero, 27 S.W.3d 1, 5 (Tex.App.--San Antonio 2000, pet. denied); Carlin v. 3V Inc., 928 S.W.2d 291, 294-97 (Tex.App.--Houston [14th Dist.] 1996, no writ); Merrill Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874, 879 (Tex.App.--Waco 1992, writ denied).

4

arbitration agreement, thus could not be compelled to arbitrate; and (2) ESI's claims were outside the scope of the arbitration provision.

ESI recognizes that Texas public policy favors arbitration and that once the existence of a valid arbitration agreement is shown, a party seeking to avoid the effects of the agreement must show that the dispute is not within the scope of the agreement. See, e.g., Prudential Securities, Inc. v. Marshall, 909 S.W.2d 896, 898-900 (Tex. 1995). ESI contends that the relevant determination is whether ESI's "breach of contract/lease claims fall outside the scope of the arbitration clause." See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). In asserting that the claims are outside the scope of the clause, ESI notes that it is not suing under the Amended and Restated Franchise Agreement, but only under the Assignment and 1989 lease; neither the Assignment nor the 1989 lease contain an arbitration clause; and the Assignment does not state that it is made pursuant to the Franchise Agreement. ESI also maintains that Toot 'N Totum did not agree to arbitrate, cannot be forced to arbitrate, and because ESI's claims involve the 1989 lease to which Toot 'N Totum is a party, the dispute between ESI, Mr. Payroll and Cash America are not arbitrable. We first address Toot 'N Totum's effect on the arbitration question.

EFFECT OF A NECESSARY PARTY
NOT SUBJECT TO THE ARBITRATION AGREEMENT

Mr. Payroll and Cash America urge that even if Toot 'N Totum were to be made a party to the suit, Mr. Payroll and Cash America would still be entitled to arbitrate their

disputes with ESI because the disputes are within the scope of a valid arbitration agreement. They cite Prudential-Bache Securities, Inc. v. Garza, 848 S.W.2d 803, 807 (Tex.App.--Corpus Christi 1993, orig. proceeding), in which the court addressed claims made in the same lawsuit by a wife and husband. The wife had not signed an arbitration agreement with the defendant; the husband had signed an arbitration agreement with the defendant which covered some, but not all, claims being made by the husband. The court held that claims made by the husband which were within the scope of the arbitration agreement were arbitrable despite the presence in the same lawsuit of the wife who had not agreed to arbitrate, and although one of the husband's claims was not subject to the arbitration agreement. Id. at 807.

We agree with Mr. Payroll and Cash America. If a party to a valid arbitration agreement could effectively negate the agreement by filing suit and joining into the suit a necessary or proper party who had not agreed to arbitration, or alleging the necessity or possibility of future joinder of such a party, then agreements to arbitrate disputes would be, practically speaking, illusory. The Texas Arbitration Act, TEX. CIV. PRACT. & REM. CODE ANN. § 171.001, *et seq.* (Vernon Supp. 2002), recognizes that arbitration agreements may not cover all parties and all issues in a lawsuit. See id. § 171.025. The Act directs that the trial court shall stay a proceeding which involves an issue subject to arbitration, but that the stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding. Id. Assuming, *arguendo*, that Toot 'N Totum is a necessary party to the lawsuit, such fact does not preclude Mr. Payroll and Cash America

6

from asserting their right to arbitrate issues within the scope of a valid arbitration agreement, whether or not Toot 'N Totum is actually a party to the suit. See id.; Garza, 848 S.W.2d at 807.

SCOPE OF THE ARBITRATION PROVISION

Mr. Payroll and Cash America urge that ESI's claims arise out of and are related to the Amended and Restated Franchise Agreement because the Assignment was executed as part of the transaction involving execution of the Agreement, and was required by the Agreement. They further assert that even if ESI's claims are construed as claims or controversies not "arising out of or related to" the Amended and Restated Franchise Agreement, the language of the arbitration provision is broad enough to require arbitration of ESI's claims because the language requires arbitration of "any and all disputes" between the parties in addition to disputes arising out of or related to the Franchise Agreement. For the reasons set out hereafter, we need not determine if the claims arise out of or are related to the Agreement.

In the absence of an allegation of ambiguity in the contract language, the instrument alone will be deemed to express the intent of the parties. See Exxon Corp. v. West Tex. Gathering Co., 868 S.W.2d 299, 302 (Tex. 1993). A contract should be construed as a whole, attempting to give effect to all contract provisions so that none will be rendered meaningless. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464

(Tex. 1998). Separate contracts between the same parties executed at the same time and pertaining to the same transaction are generally construed together. See DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999); Jim Walter Homes, Inc. v. Schuenemann, 668 S.W.2d 324, 327 (Tex. 1984). A contract is construed in accordance with the plain meaning of its language, unless it definitely appears from the writing as a whole that the intention of the parties would be defeated by such a procedure. See Parks, 1 S.W.3d at 101.

The plain, unambiguous language of the arbitration provision before us provides for arbitration of *all* disputes between ESI and Mr. Payroll with specific exceptions for actions with regard to ownership or use of Proprietary Marks or fees to be paid under a specified section of the Agreement. ESI offers no authority for its argument that the language "any and all disputes" does not mean what it clearly says: all disputes involving these parties, with specified exceptions, none of which apply to the current dispute. Nor does ESI offer authority for its assertion that the language is not broad enough to cover this specific dispute arising out of duties and obligations created during the course of business dealings involving check cashing operations and locations, which are the bases of ESI's relationship with Mr. Payroll and Cash America. See Parks, 1 S.W.3d at 102. And, we have previously addressed and discounted ESI's argument that the dispute is outside the scope of the arbitration provision because Toot 'N Totum is, should be, or could be involved. We conclude that the dispute is within the scope of the arbitration provision.

8

Finally, we consider ESI's argument that the venue provision in the Assignment removes this dispute from the arbitration provision, even if the dispute would otherwise fall within the scope of the provision. See Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987). The language of the venue provision does not reference or purport to be an amendment to the section of the Franchise Agreement entitled "Resolution of Disputes," the subsection entitled "Arbitration," nor the specific language of the arbitration provision. The venue provision is part of a single sentence which includes choice of law and forum selection language. The sentence selects the law of the state in which the premises are located as the law to be used in construing the Assignment, and designates the location for dispute resolution as the county in which the premises are located. Reasonably construed together with the Amended and Restated Franchise Agreement which was to be effective on the same date as the Assignment, the provision does not prescribe how disputes are to be resolved, only where. See In re Winter Park Constr., Inc., 30 S.W.3d 576, 578 (Tex.App.--Texarkana 2000, orig. proceeding). We conclude that the venue provision in the Assignment does not contradict language of the arbitration provision nor does it remove disputes from the scope of the provision.

CONCLUSION

The claims asserted by ESI in its Original Petition are within the scope of the arbitration provision in the Amended and Restated Franchise Agreement executed by ESI and Mr. Payroll as principals and Cash America as guarantor. The Order of the trial court denying the motion of Mr. Payroll and Cash America to abate ESI's suit and order the

9

parties to arbitration is vacated. The cause is remanded to the trial court for further proceedings in accordance with this opinion.

Phil Johnson<br>
Justice

Quinn, J., concurring

Publish.

NO. 07-02-0077-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 29, 2002

_____


CASH AMERICA INTERNATIONAL, INC.
AND MR. PAYROLL CORPORATION,

                                        Appellants

v.

EXCHANGE SERVICES, INC.,

                                        Appellee


_____

FROM THE 320th DISTRICT COURT OF POTTER COUNTY;

NO. 89151-D; HONORABLE DON EMERSON, JUDGE

_____

***Concurring Opinion***

_____


I concur in the majority's opinion and disposition but write to specifically address a contention Exchange Services, Inc. made at oral argument. There, it asserted that because the parties agreed via paragraph 23.0 of the franchise agreement that "nothing in this [franchise] agreement shall terminate or *otherwise affect any lease of real property*

*that relates to the Existing Franchises,*" the arbitration clause contained in the franchise agreement has no "affect" upon disputes arising under the lease. (Emphasis added). Assuming *arguendo* that the passage "or otherwise affect any lease" could be read as encompassing disputes or litigation involving duties imposed by the lease, I note that the claims of Exchange Services are founded on more than just the lease. For instance, it also seeks to enforce obligations purportedly assumed by Mr. Payroll Corporation under the Assignment and Assumption of Lease and Estoppel Certificate agreement. The latter, more importantly, is mentioned nowhere in paragraph 23.0. Thus, any purported immunity from arbitration created by paragraph 23.0 does not encompass those disputes implicating or arising under the agreement to assign the lease.

<br>

                                                      Brian Quinn
                                                      Justice

Publish